Our third case of the morning is Case 116-173, WISAM 1, Inc. v. Illinois Liquor Control Commission. Are you ready to proceed? Yes, ma'am.  Madam Chief Justice, and may it please the Court. My name is Dan O'Day, and I'm here on the day after St. Patrick's Day representing a liquor store. It doesn't get any better than that. It might have been better if it were yesterday. I was in a room about half this size at the liquor revocation hearing in this case, and it was a room that was laid out about like any hearing room, where there was somebody at the front of the room who was supposed to be the judge in the case, in this case a local liquor control commissioner. And rather quickly after the hearing started, only three minutes late, that was a good sign, but after the hearing started, things started to go haywire. The hearing officer, the local liquor control commissioner, started out with warning us that if we had a lack of decorum or a lack of respect, that he would enter judgment for the city against the liquor store if that happened, and we could just take it up to the state commission. And that's how the whole thing started. Then before opening statements ever started, he admitted three volumes of federal testimony and evidence over our objection. Then we started opening statements, and during opening statements, the city gave their opening statement, I gave my opening statement, and then they were allowed to have a reply opening statement, at the end of which they asked for a directed finding that they win the case. When was the stipulation entered? Pardon me? When was the stipulation entered? The stipulation was put in, was referenced at the hearing before opening statements, as well as the transcripts being admitted at that time. So at the end of opening statements when they... Mr. O'Day, just keeping on that, why can't the decision below be affirmed on the same basis that it was affirmed at three levels below, that the stipulations themselves were sufficient to support the revocation? I think every time that this stipulation has been referenced by a tribunal, they have paraphrased the stipulations. There have been, for example, ellipses used to eradicate language from the different paragraphs of the stipulation. For example, in the paragraph one of the stipulation, where it says that all dates and times is indicated in the notice of charge, they'll get rid of dates and times in the notice of charge and say at all dates and times he was an agent of the liquor store. The next one, where it says there was an accurate and true copy of the indictment, they'll get rid of the word copy and say that somehow we've conceded that the indictment was true and correct, and rather than it just being a true and correct copy, and so on. So I don't believe, in paragraph five, for example, that we cash checks for... The manager, employee, or agent was found guilty in a Federal criminal trial? That's not disputed. And that was stipulated? That was stipulated that that happened, that the jury had found, had convicted the person. And that the Federal offense is related to the financial and business operations of plan? That's right. And the ordinance prohibits illegal activity on a licensed premises? And or about the licensed premises. So regardless of the fact that you quibble with certain aspects of the stipulation, what you just virtually stipulated to before this Court, why isn't that enough? It's not enough to show that anything happened, first of all, in or about the licensed premises, that the violation occurred there under Section 328, 3-28 of the Peoria Municipal Code. It is not that somebody's convicted that is the offense. It's that there's a violation, and the violation has to occur in or about the licensed premises. Now, you can have an ordinance or a statute or a regulation that can say, well, if it relates to the business, then that's enough of a violation, whether it happens in or about the licensed premises or not. A good example of that would be the State Liquor Commission's rule, Section 100.30b, where it says if you've got a violation that's in or about the licensed premises or one that relates to the business of the liquor store, that that can be then a violation. But that's not what Section 3-28 says. It doesn't say that it's enough that it relate to the business. It says it's got to occur in or about the licensed premises. You conceded in your brief that you did not raise the sufficiency of the evidence in your petition for leave to appeal. You framed this as a due process case, correct? Well, I think that part of the due process violation is that there wasn't sufficient evidence to sustain it after you eradicate all the due process violations in your analysis. So that's kind of my question, is what is the issue before us? Certainly you've argued, you began your argument with, that you were not given an opportunity to be heard. Is that the main thrust of your argument? Yes. I think that under your cases in 1992 in both Balmoral and in Abrahamson, that you say that the hallmarks of a due process administrative hearing are an opportunity to be heard, confrontation of witnesses, and that in Balmoral you even say that some of these things are inviolate, that you've got to be given them or else it's a violation of due process. So you had an opportunity to present evidence. You participated in a stipulation. And at some point, the hearing officer, you said something like, can we present some evidence in this case or are we precluded? And the commissioner said, well, this is a relaxed atmosphere. I don't have a problem with you presenting any additional information. And you did, correct? You offered documents, exhibits, evidence, made an argument, and at the end of that you said, that's all I have. So were you denied an opportunity to be heard? Yes. How? We were making that as an offer of proof. I believe it's clear in the record that that was a mere offer of proof that the hearing officer had already ruled against us on the issue of directed finding. And then at the end of us finishing, the counsel for the city said, but you've already decided for us, isn't that right? And the hearing officer says, yeah, that's right. Go ahead and proceed with the penalty phase. We think that's the way that the whole thing happened and that's what did happen. That's the way the hearing was conducted. So I think that this offer of proof that we made was never considered. It was never considered. Is that a due process violation? I mean, you were able to introduce some exhibits, correct? As an offer of proof. I'm not sure I know the difference. You were able to admit into evidence some exhibits. I don't agree with that. I think that we were not allowed to admit it into evidence that we were making an offer of proof after it had already been determined that we were moving on to the penalty phase and that I was making it very clear that this was being done as an offer of proof and that I was being allowed to do that. The basis of your offer of proof, if I could understand this, is to raise issues about the propriety of how deposits were made in the bank, that this was based on insurance policy concerns and that kind of thing. Is that right? Yes, that's right. So my next question to you is what prejudice was there to you if, in fact, this process did not meet the standards of a due process? What prejudice is there to you? It was never considered then. It was an offer of proof that was never considered. It wasn't considered by the LLCC at the Peoria level. It wasn't ever considered by the State Commission that you can see. In fact, if you read your decision in Balmoral, there were five things that were supposed to be considered that weren't, that you found weren't considered. And I think the proof in the pudding here that they were never considered is that when the circuit judge looked at the decisions of the city and of the State Commission, the circuit judge didn't even know that those insurance exhibits had been put into the record as an offer of proof because he said that we didn't corroborate our claim of insurance by putting in any evidence of what the insurance policies provided. And your client testified to all of that, too, didn't he, at the hearing? He sure did. As an offer of proof. But he actually testified, didn't he? As an offer of proof. But I don't think that the offer of proof was ever considered. Nobody, there's nothing in the record, either at the LLCC level, State Commission, certainly in front of Judge Brandt, who didn't even think that the insurance exhibits were submitted, and he said then there was no corroboration of what Mr., what my client said, they never got considered. In fact, they never got considered in the Federal trial either, we know, because they were never submitted there. Well, let's talk about the Federal trial. You, the evidence that apparently you say was not considered and that therefore was a denial of due process was your client, who actually testified to this at the hearing, but your client's statements that the way, the reason why these bank deposits were structured the way they were was because of the insurance policies, right? That's your concern, that that wasn't considered. Now, wasn't that same evidence presented to the Federal jury and rejected? Well, very inartfully, and not by my client. It was by this former employee, Michael Assad, who had been indicted in that case. His lawyers never got the insurance policies or the declarations pages, never submitted them, and then his, their client testified at his own Federal trial that there were insurance reasons to keep the amount under $10,000 that was actually withdrawn as cash from the bank, because only $10,000 was insured. And then he, though, he sort of got it all messed up. He didn't, he said that they were $10,000, but then he found out later it was $2,000 and all that. The precise policies are, were that during this period of this alleged conspiracy, it was $10,000 and $5,000 off premises the whole time that the alleged conspiracy And you stipulated to the conviction based upon the testimony, including the insurance policy, that was rejected by the jury, right? This was presented to the jury. They rejected it. He was convicted, and you stipulated his conviction. There was, in fact, a conviction. This stipulation stipulates the things that I think are not refutable. In other words, they're irrefutable facts, that there was an indictment in a Federal case that the jury convicted the defendant in that case, et cetera. But the question is, then, how does that conviction translate to any kind of a finding against my client, the liquor store, where there's a conviction of a former employee? Usually, in these cases, they're a lot more simple. They're, in liquor stores, they'll involve, did somebody sell alcohol to a minor or not? Did somebody get in a fight on the premises? Did they call police fast enough? Things like that. And in the person who's the liquor store employee, they might be convicted. But at the hearing, the liquor control hearing, they'll still bring the police in to testify. They won't rely on that conviction of the employee to prove the case against the liquor store. They'll bring the police in, oh, they sold liquor to the minor, and therefore, the liquor license should be suspended or revoked, that kind of a thing. And here, they regarded the conviction of a former employee as being absolutely binding, and meaning that it had total preclusive effect against the liquor store that wasn't even a party to that case. Ms. Roday? Yes. With regard to that offer of proof, could you clarify the liquor commission made a determination already that the liquor store was in violation? And after the determination by the commission, there was a request by you to have an offer of proof of what evidence you might have been able to put before the commission had they permitted you to? That's right. So they did not take that into consideration? I don't believe so. And I've tried to lay out in my initial brief exactly what happened at the hearing and why that was so, but I know that I thought it was an offer of proof that was being made. So that evidence that you had with your client and other material evidence that you put in as offers of proof, the appellate court could have, I don't know whether they did, take that into consideration because it was in the record or they are not allowed to? Well, I think that the appellate court said that it was considered to be evidence by the state commission, and we then filed a petition for rehearing in the appellate court saying that there was no proof in the record that it was ever considered as evidence, and our petition for rehearing was denied on the same basis, a two-to-one decision, as the appellate decision in this case. So I don't think that it was ever considered. And, you know, that's just part of it, our ability to put in our evidence that was never considered. Part of it also was that there was no right of confrontation for any of these witnesses that testified in the federal case. These three volumes of transcripts came in to evidence on a wholesale basis. We got to the hearing room that morning, and they plopped these three transcripts on the table that I think had just been, the court reporter said they were done the Friday before or something like that, and without any specification of which witnesses or which statements were coming in, we objected and said we haven't had a chance to cross-examine these witnesses, and it's admitted over our objection. What are the specific statements that you're objecting to? In the federal transcripts? Well, I think all of them, but let me single out a couple of people. There was a person named Jamal, I'm trying to recall his last name, but he was somebody who had worked there, he said, in the 1990s, and that in the 1990s that he recalled that they were charging 2% when they were cashing checks. Well, my client's liquor license wasn't even granted until 2002. The police officers who testified during the ---- I'm not asking you about the facts. I'm asking you what are you objecting to? What's the basis of your objection? Specifically, we should be looking at the, is it Zaid? Is that his name? Yeah, Jamal Aziz. Okay. What do process violation should we be looking for in terms of that? Not the content, necessarily. We can get to that. But your point of view is, your issue here is due process. If we look at his testimony, what do process violation is there in the hearing? First of all, I think that the State Commission said that they were using the transcripts for purposes of determining where the violations occurred, that the violations occurred in or about the premises. So they were using, I believe, Jamal Aziz and Ashraf Ali's statements to show where were these alleged violations occurring that they were occurring on the premises. One statement that Jamal had made at the federal trial was that in the 1990s they charged 2%. And then he testified that after he became a government paid informant, et cetera, that there was one day that he went there when they were busy and then he conducted a check transaction where he might have charged more than the 1%. Let me ask you this. Didn't your client testify at the hearing that the bank deposits were structured because of the insurance policy, because cash was coming in because of cashing of checks? No. He testified, I believe, that the withdrawals from the bank of currency to take back to the premises were kept below $10,000 because of the insurance. Because there was cashing checks going on. He admitted that people were cashing checks in the bar and then he had to deal with how to structure the deposits in the bank, correct? There was no doubt about that, yes. Okay. So what does it matter about this transcript that he said at the trial that people were cashing checks? Because, first of all, I don't believe that my client or anybody that was there that day for the hearing testified that this was happening in or about the licensed premises. I think that even in the federal indictment they alleged that this was occurring at the banks where the amounts were being withdrawn. And so we do think that they had to go to the transcripts in order to get their evidence about where they say there was proof in or about the premises, and I guess we agree with them on that. They had to go to the transcripts to get that because that was not in the stipulation. What was in the stipulation was that they cashed checks on the premises. But did they have to go further than stipulation? Isn't it reasonable that the finder of fact can rely on reasonable inferences from the stipulation and can conclude that the offenses that were stipulated to related to the financial and business operations of the plaintiff did not happen solely at the bank? I don't think so. I think that on a stipulation that it's not sort of like the Carnac with Johnny Carson where you can start adding things to what's on the stipulation. The stipulation is very precise here about what it says, and it never says that anything happened in or about. No, I agree with that. But in your position is that reasonable inferences can't be drawn from any stipulation? And it wasn't reasonable to conclude that these financial transactions did not occur solely at the bank? I think that, first of all, the federal government claimed that they happened at the bank. But Section 3-28 of the Peoria City Code, it says that it's based on where a violation occurs, not part of a violation or not an element of a violation or not, you know, an overt act in furtherance of a conspiracy or anything else. It says the violation has to occur in or about the premises, and I think it's clear that these violations were alleged by the federal government to have occurred at the bank. Thank you. Good morning, Your Honors. Counsel. May it please the Court. I am Christopher Turner, the Illinois Assistant Attorney General here on behalf of the Defendant Appellee, Illinois Liquor Control Commission, which I'll refer to as the State Commission in this oral argument. This Court should affirm the State Commission's decision to revoke Whistler v. Wissum 1, Inc.'s liquor license because there is sufficient competent evidence in the record to show that Wissum 1, which I'll refer to as Sheridan Liquor, has violated Section 3-28 of the Peoria Municipal Code. But as I explained, it was Sheridan Liquor's stipulations and the attached indictment, which helped define what the stipulations were, that provided sufficient evidence for the local commissioner and for the State Commission to reasonably infer that, first of all, Sheridan Liquor's employee, Mike Assad, engaged in a two-year conspiracy with its – with Sheridan Liquor's manager to violate the U.S. Bank Secrecy Act, and that at least some part of that conspiracy occurred at Sheridan Liquor's premises. Excuse me. Could you repeat that? At least part of what? Part of that conspiracy occurred at the premises. What Section 3 – they were – their license was revoked for violating Code Section 3-28. And Section 3-28 prohibits the licensee, its employee, or any agent from engaging in any conduct or activity prohibited by Federal law in or about the licensed premises. So that's – so it's not – it is a violation of law, but it's any activity or conduct, any part of that legal violation. And here it's important that the violation of the law that he was – Mike was convicted for was a conspiracy. And furthermore, he was convicted for the offenses as charged in the attached indictment. Contrary to the suggestion by counsel for Sheridan Liquor's, we weren't ever arguing that the stipulation that the indictment is true and correct. That that's – that we were alleging that on that basis they had actually stipulated to the allegations in the indictment that they were true. However, what they did do in the paragraph – Could you repeat that? Sure. This is what we didn't do. We have never argued that they stipulated that the allegations in the indictment attached to the stipulations are – were true. That what we argued is that they stipulate in paragraph 3 that he was convict – that Mike was convicted for the Federal offenses as charged in the attached indictment. So the attached indictment helps define the scope of the crimes, the offenses for which he was – for which he was convicted. And that's what it charges there, the two-year conspiracy, that he participated with Sheridan Liquor's manager. It specifically sets up those charges. It stipulates that Mike was convicted for the Federal offenses as charged in the attached  It stipulates that Mike was convicted for the Federal offenses to structure millions of dollars of Sheridan Liquor's funds for use in the – in Sheridan Liquor's business. They also stipulated that his offenses related to the financial and business operations of Sheridan Liquor's. And it was from these stipulations that a court – that the hearing officer and the State Commission could first reach a fact finding and reasonably infer that, yes, Mike, in fact, violated the – committed those offenses for which he was convicted. And then second of all, that those – that one of those offenses, the two-year conspiracy, occurred at least in part at the premises. And therefore – So you're saying that he did it – the Commissioner made the decision based totally on the stipulation, and that's why he didn't have a hearing? He did have a hearing, Your Honor. We disagree. Was it the offer of proof hearing? We disagree. It wasn't an offer of proof hearing. He had – it was an administrative proceeding. He did have to enter an initial factual finding, which we agree was premature. However, and that was actually at least according to his – what he said on the record was just based on the stipulations and the attached indictment. He made a finding, and then there was a hearing. He still had a hearing, and he specified at pages C44 to 45, when counsel asked, wait, can I present my evidence still? Yes, you can present any additional information, which counsel did. He entered into the record the insurance declarations. The first thing he did was enter those insurance declarations as exhibits in support of his defense. And then their testimony, their sole witness, Adnan Asad, the owner of Sheridan Liquors, his first testimony was then in support of those insurance declarations and in support of that same defense. And then again, at the end of closing arguments, he argued – he reasserted his arguments. And at the very end of the hearing, the local Commissioner specified that I am now going to look at all the testimony and exhibits that have been submitted. And then the next – and then he reached – he issued his final ruling where he reaffirmed his final decision. So he did, at least he did hold a full hearing, take that – take those defenses into evidence and consider them and reject them. Do you – are you aware, does the local Commission have any adapted rules and regulations for purposes of conducting hearings? The only – I'm only aware of the code, the portions of the municipal code. I know we cited 3-29, I think, sets out some of the powers of the hearing Commissioner. But I don't really know the specific rules. If there's a specific question I might be able to answer, but I don't. Was the defendant allowed to cross-examine any witnesses from the Liquor Control Commission's case? Yeah. The defendant shared Liquor's cross-examined – was able to cross-examine all the witnesses that were there at the hearing. And they actually – also did – the Commissioner – the local Commissioner did have the power of subpoena any witnesses that they might want to subpoena. They argued that they weren't able to cross-examine the witnesses in the federal transcript. But going back to our initial point, our primary argument is, if your court finds – agrees that the stipulations themselves provide a sufficient basis to support the decision, they never – this Court never needs to reach the issue of whether or not the federal transcripts were improperly admitted. So it wouldn't matter then whether or not they were able to cross-examine those witnesses. Although they – we do actually argue they did have the ability to do it. But the Commission – Control Commission would not have any case without the transcripts. No, Your Honor. That's not – they did have a case without the transcripts. What was the proof besides the transcripts? The stipulations, Your Honor. The stipulations – So the stipulation and the transcripts was the proof. No live witnesses. There were – well, Adnan Asad himself did testify. When he testified in support of the defenses to those – to the charges and to Mike's – you know, Mike's alleged violation of the crime, he acknowledged that, yes, they had a policy at the store to keep the money under $10,000. Now, that further just supported the reasonable inference, assuming that the hearing officer was making the factual finding that, yes, based on the prior conviction and jury finding, I believe he was, in fact, guilty. But then also this additional information that, oh, yes, we have now also admission that this was store policy. If I believe that that – that that store policy then meant to make the inference that it was part of this effort to evade the Bank Secrecy Act, it obviously would have been – involved some prohibited activity at the store, the conspiracy. I would have given instructions, reached agreements at the store. And that's what – the Federal transcript just offered additional support for that reasonable inference, Your Honor. Mr. Turner, I'd love to follow up to make sure I understand this. If we take what you said, putting aside the Federal trial transcript, what evidence is in the record that shows the offensive conduct took place in or about the licensed premises? It is the stipulations, and particularly both the stipulation that he was convicted for the offenses as charged in the indictment. It was the stipulation that those offenses involved the financial and business operations of the store. And it is from the stipulation that was as charged in the – that he was convicted for the crimes as charged in the indictment that it did, in fact – he did, in fact, engage in a two-year conspiracy with Shared Liquor's other manager to structure millions of dollars of the store's funds. And from those facts, it can make the reasonable inference that part of that two-year conspiracy would have occurred at the store, whether it was the agreements between him and the manager, their instructions to one each other or planning to make the transactions, and otherwise to give instructions to other employees to make bank transactions under $10,000. Well, let me ask you this. If I understand Mr. O'Day's argument, he says the stipulation references the indictment as a correct copy of the indictment. And I'm not making his argument. I want to see what you're saying, that it really doesn't stipulate or admit or concede that the conduct took place at the – in or about the licensed premises. Your Honor, we agree that they did not stipulate that the allegations – that they did not stipulate that the offenses took place at the store or even stipulate that the allegation – the charges in the indictment were true. But what we do say is it was actually – it's the following paragraph 3 that they did stipulate that he was convicted for – that Mike was convicted for the charges as charged in the indictment. And that, therefore, you can look at the indictment to know that it was the basic facts that it's a violation. It was a two-year conspiracy with the store's manager. And it was from the – you can make the reasonable inference from that conviction for those charges that part of his crime, part of his violations occurred at the store's premises. Is the indictment, the actual indictment, part of the stipulation? I mean, I know there's a reference, but is it physically attached? It was. It was an exhibit. And that's – that was the other paragraph number 2. The first paragraph 2 is the – if I have the right one, that the attached indictment was a true and correct copy of the indictment. And then it says – and then it – after that stipulates that he was convicted and found guilty for the offenses as charged in that attached indictment. Maybe just one other follow-up. Does the indictment allege that the conduct took place at the premises? It does not specifically allege charge that it took place at the premises, but from the facts of the crime that it does charge, you can make the reasonable inference that part of that crime, that conspiracy, would have occurred at the premises. In fact, the only – otherwise the only reasonable inference the Court would be holding is the only reasonable inference from that two-year conspiracy, from those charges, is that none of that activity between him and the store's manager would have occurred at the premises. They all would have had to have occurred somewhere else. Whether they're agreements, they're planning, they're putting the signing of the check, and then the use of the money back in the store again. All these things were involved in the store's premises. The transcript was just provided to illustrate as further support that, yes, that inference is reasonable because it was the testimony by Zeid and the other former employee, Ali. They testified to conversations that had occurred between them where Mike was a participant where they were instructed to keep the bank transactions for the store at $10,000 or less in order to avoid bank reporting or alerting the government. And that just illustrates the basic reasonable inference that you can make based on the stipulations. I see my time is up unless the Court has any more questions. For the reasons set forth in our brief and argued here, we ask that the Court affirm the Third District and affirm the State Commission's order. Thank you. Thank you. Thank you. Good morning, Madam Chief Justice. And may it please the Court, my name is Sonia Williams, and I represent the Appalese City of Peoria Mayor Jim Artis and Deputy Liquor Control Commissioner, Eric Turner. I am here to respectfully request this Court affirm the State Liquor Commission's decision upholding the revocation of the liquor license of Sheridan Liquors. Sheridan Liquors' license was revoked for a violation under Section 3-28 of the Code of the City of Peoria, in which no licensee or any officer, associate, or employee of Sheridan Liquors, is allowed to license premises which is prohibited by any ordinance, state law, or laws of the United States. In this case, and as indicated, Mike Assad, the manager of Sheridan Liquors, was found guilty of committing criminal activities, criminal offense of structuring financial transactions to be under $10,000. What ties that act of Mike Assad, the manager of Sheridan Liquors, to Sheridan Liquors is the general principle that every act or commission whatsoever done by the employee shall be deemed and held as if the licensee itself made that act or omission. Was the licensee part of the federal case? No, not directly, not WISM-1, no. Was he indicted? Was the licensee indicted? The licensee's WISM-1, no, I believe it was, but I believe, no, WISM-1 was not. So in this case, what was before the Deputy Liquor Control Commissioner was a stipulation that cannot be undone. And Justice Thomas, you hit the nail on the head on this case. The stipulation alone is sufficient to prove the violation occurred and to uphold the revocation of the liquor license held by Sheridan Liquors. The stipulation, as indicated, as attached to the plaintiff's appendix 18, it states that all times in the criminal indictment, Mike Assad was manager of the licensee. At no time during the local hearing did the Sheridan Liquor ever indicate Mike Assad was a former employee or no longer employed by the licensee. This is the first time that the appellant has stated that Mike Assad is a former employee. But at no time during the hearing did they indicate that Mike Assad was not an employee at the time of the hearing. Now, Mike Assad was charged, as I indicated, for a criminal offense of conspiring to structure a financial transaction to evade reporting. And as included in the indictment is the manner and means that was used to accomplish that conspiracy, and pivotal to that was Sheridan Liquors. The key fact stipulated and admitted by Sheridan Liquors is that jury found Mike Assad and jury, with the burden of proof beyond a reasonable doubt, found Mike Assad the manager of committing the federal offense described in the indictment. So let's not forget that the indictment itself specifically mentioned Sheridan Liquor. If the indictment did not mention Sheridan Liquor, we would not be here today. But it specifically mentioned Sheridan Liquor as the mean and manner to accomplish the conspiracy. In fact, the indictment stated that the indictment and also the stipulation, and this is something that Sheridan Liquor admitted to, they stipulated that the criminal offenses all related to the financial and business operation of Sheridan Liquors. If it was just the financial transactions alone, the word and would not be there. The conjunction and would not have been there, and again, we would not be here. But again, Sheridan Liquor stipulated too that all the criminal offenses that Mike Assad was found guilty of committing related to the financial and business operation of Sheridan Liquors. So let's clear the record from all the smoke and mirror that Sheridan Liquor has made in their argument. Mike Assad was the manager of Sheridan Liquors when he committed the federal criminal offenses. And that alone meets the element of the criminal offense. Now, as to the other part of Section 3-28 is the element of in or about the licensed premises. So how was that proven by the stipulation? Well, that was, again, as Mr. Turner indicated, that the indictment that was attached to the stipulation, again, states that the Sheridan Liquor was the means and manners to, in the commission of the conspiracy. So at that time, the Liquor Commissioner has every right to make reasonable inference to what is presented before him. And that's a reasonable inference that he made was that based upon the stipulation that the Sheridan Liquor entered into and the indictment in which the indictment laid out how the conspiracy was conducted, and it was conducted for the mean and manner of promoting the cash-checking business that Sheridan Liquor admitted that they were cashing checks, that alone shows the reasonable inference that the offense, the criminal offense, occurred on or about the licensed premises. In addition, Mike Assad, the owner of the licensee, admitted during the hearing that he himself structured the transactions to be under $10,000. It's the owner? You said owner, or is he the manager? He, Mike, I'm sorry, Adnan Assad is the owner. He's the president of Wisam One, and he's the brother of Mike Assad and also brother of Jalad Assad, the other employee who was, who was indicted by, for the same Federal criminal offense. Now, Mike Assad, again, made his explanation, his explanation that he was structuring it for the insurance purposes. And in Sheridan Liquor's brief, they go into great details what that insurance policy covers. And for the period of the, that relates to the criminal offenses, they include the coverage of $10,000 in the store and then about $5,000 outside the store. So you would think that in order to be able to actually carry cash from the bank to Sheridan Liquor, that they would have actually had $5,000 or $2,000, whatever the policy was for cash outside, and they would have withdrawn that from the bank and brought it to the store. But no, they didn't. So it actually works against them. And before I run out of time, I do want to point that in the record, C-44, it does state when Eric Turner made that decision that he's going to make that decision based upon the Federal indictment that is clear violation based upon Federal indictment of Section 3-28. So without even considering the Federal transcript, the stipulation, the indictment that was contained in the stipulation was sufficient to prove 3-28 of the Code of City of Peoria was violated. So that, again, that's a reasonable inference that the Deputy Liquor Control Commissioner made, and therefore, it should be upheld by this Court. And in closing, again, I would respectfully request this Court to affirm the Liquor Commission's finding because there is sufficient evidence based upon the stipulation and indictment that was attached to the stipulation to uphold the revocation of the liquor license held by Sheridan Liquors. Ms. Williams, you just read from what the local Liquor Commissioner ruled. Was that before any evidence was presented by the liquor store? That was, I believe, there was before the evidence that was presented by the liquor store, yes. If there are any questions, thank you. Thank you. What happened was the Deputy Liquor Commissioner left the room, and he came back in and said that he'd left to go talk to a lawyer outside the room, and that the lawyer told him to enter the finding based on the Federal indictment. And so he said that's what he was doing. And so it was based on the indictment, which is just a charge, that he came back and said that he entered it. He certainly referenced at some point the stipulation that you entered into. That's right. Okay. So you have phrased this as due process. Again, not sufficiency of evidence, due process. And you criticized the manner in which this hearing was conducted. If it had been conducted in another way, what additional evidence would you have presented that you were not able to present at the hearing? We would have been able to cross-examine their witnesses, and we would have been able if they were going to call as witnesses the same witnesses that they claim proved the violation in Federal court. So is it really the heart of your case that you believe that at the local liquor commission that there needed to be a retrial of the Federal trial? All of those witnesses had to come in, and you would be able to cross-examine every one of them? Is that what you're saying? Yes. We are saying that. We're saying that we were not part of the Federal trial. We didn't have a chance to cross-examine any of the witnesses of the Federal trial. And if they were in the conviction of somebody else by a jury, which hasn't even ripened to a judgment yet in Federal court, that that was not binding on the employer. And that it's no doubt that it happened, that there was a jury verdict convicting the former employee, but that that was not binding on the employer. The employer, the licensee, was not accused of committing a violation of Federal law in either the notice of hearing or in the indictment. And that we should not be regarded as bound by anything that happened at that Federal trial. It was not res judicata, and it was not collateral estoppel. What other evidence, other than cross-examining those witnesses, what other evidence would you have presented? We probably would have confronted each and every one of them with the insurance policies and said, you know, why, how do you explain this, that there's these insurance policies about $10,000. And Jamal, we would have asked him, well, what you're saying happened in the 1990s, which was before 2002. Could you explain? I'm not sure I understand. Just help me with the insurance policies. You presented the two, whether they were admitted or not, we've kind of debated  But you presented the two insurance policies to the Commissioner, correct? Right. Okay. What else would you have done? What other evidence would you present? Well, I think we would have cross-examined their witnesses who were suspect because they were being offered things for their testimony and everything. We would have been able to confront them with that. And just the right of confrontation alone, I think, is an important thing. I don't think they were adequately confronted at the federal trial because at the federal trial, these insurance policies had not been procured either by the defense or by the prosecution. So they weren't available to confront the witnesses. So I think we would have confronted them. The only witnesses we were able to confront were police officers who were testifying in the penalty phase. We weren't ever able to confront anybody in the liability phase because of the finding that was made. Mr. O'Day, do you consider that a structural error if the defendant in an administrative hearing is not allowed to present defense at all? A structural error? I'm not sure exactly what structural means, but I think that it's, under your Balmoral case, just an absolute fundamental error when you're not allowed to do these things. And in Balmoral, you talked about how some things are just absolute in due process, like being able to do these things, like confront the witnesses, to present your case, et cetera. And, you know, there's been some discussion in the appellate court about, well, efficiency, and like in cases where parking meter attendants aren't required to come testify, that there are some efficiencies, and the Illinois appellate court says, well, it's not all about efficiency. It's about due process, too, and you've got to sort of weigh efficiencies versus due process. And I think whereas here they're saying that a violation occurred where the ordinance doesn't say it's, like you have pension cases before you right now where something can be based on a conviction, that somebody loses their pension based on a conviction, not on a violation. Here the ordinance says violation. They've got to prove a violation, not that there was a conviction. Is there any effect at all of the federal indictment and conviction in the liquor control proceedings? You know, I know that if you read, first of all, this stipulation, they sort of try to pick and choose sometimes what they're accepting from the stipulation. The stipulation says that the guilty finding by the jury was for committing offenses as charged in the indictment. Now, when the indictment charged that everything happened at the bank, the bank, first of all, 31 CFR 103.11GG, which is the federal regulation on this, it says structuring happens at financial institutions. Count one of the indictments, C171, said it happened at the bank. In C174 to 176, which is in the record, that's part of the indictment, says the overt acts occurred at the banks. And so when they're saying that the stipulation, you can get an inference that it happened at the premises, actually the indictment contains exactly the opposite inference. It says it happens at the banks. Then what was the stipulation about the offenses related to the financial and business operations of Sheridan Liquors? What does that mean? It concerns Sheridan Liquors, their business and financial operations, that those, what was charged in the indictment concerned that. I don't think it means anything more than what it says. If somebody, if we started a hearing and you asked me was there an indictment in federal court and is this a true and correct copy, I would say yes. And if you asked me on down the list here, did this happen, was your former employee convicted, I would say yes. Did the indictment allege offenses that related to the financial or business, I would say yes. But I would also tell you that we're here to dispute, first of all, the rightness of that jury verdict in federal court and that it's not binding on us because we never had an opportunity to participate in the federal proceeding. Adnan Asad was subpoenaed to be a witness. He was kept outside the whole time, never did the business get a chance to. Now, there is a Mr. O'Day. Yes. Earlier you made a statement that the verdict is not ripened to a judgment. And then just a moment ago you made the same reference to some kind of not ripening into a judgment. Can you explain what you mean by that? Well, in federal court like state court, there's often a gap between a jury verdict and when judgment is actually entered and sentencing and et cetera. And at the time that this hearing was held in the city of Peoria, that had not yet ripened even into a judgment. What about as of today? I think as of today it had. Is there an appeal pending? An appeal is not pending. Is not? Is not pending. He's already served his sentence. But at the time that this was done, and there's other elements of collateral estoppel and res judicata too. You've got to have the same parties or at least somebody's got to be in privity. And I think that the facts in this case are that the day that the search warrant was served on Sheridan Liquors to get their books and records, Mike Asad was working at a liquor store in Peoria Heights. And that never changed. There's never any evidence that he's, at the time that he's standing trial, employed. I want to add just one other thing. In Section 3-1 of the Code of the City of Peoria, premises is defined with a very precise definition that it's got to be part of the premises where the liquor is sold or prepared or stored that the offense happens. Well, that meets the definition of premises. So if you had an office where liquor wasn't stored or prepared or sold, I don't think the office would meet the definition of premises. And in the notice of hearing here, the allegation was that the violations occurred on the premises. I think that you have to interpret premises the same way as the Code of Civil. What about the fact, Mr. O'Day, that the LCA holds that licensees are strictly accountable for all violations that are committed by employees on the premises? I would agree. Wouldn't that bring the employer into the mix? If you were charged with violating that section, I think that they could say, well, the employee violated something and therefore you're to be held accountable. But then you'd still have the same issue about how do they prove what the employee did against the employer. I mean, you know, that's what we're talking about. I'm not disputing that under 3-28 or under the state code that you can lose your license for what your employee does. I'm disputing how is the employer held liable based on a proceeding where the employer never got to participate. Sort of like a car accident. If my employee gets into a car accident and the employee settles out, don't they still have to prove the employee's negligence against me if I'm the only one left standing in the case? And I would say that they do, and that's true in a license revocation hearing, too. Thank you, Mr. O'Day. Case number 116173, Wissom 1, Heath v. Illinois Liquid Control Commission, is taken under advisement as agenda number 9. Mr. O'Day and Mr. Turner, Ms. Williams, you are excused. Thank you very much for your arguments. We hope the students from John Marshall have found these arguments to have been interesting, challenging, and so forth. I know we do, and we thank you. This is the final case of the day for March 18th, and we stand adjourned until tomorrow morning, the 19th at 930.